UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| FRESNO MOTORS, LLC and SELMA MOTORS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MERCEDES-BENZ USA, LLC, <br><br> Defendant. | Case No.: 1:11-cv-2000-CJC <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN SUBSTANTIAL PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

On September 8, 2011, Plaintiffs Fresno Motors, LLC and Selma Motors, Inc. (together, "Plaintiffs") brought this action against Defendant Mercedes-Benz USA, LLC ("MBUSA") after Plaintiffs' failed attempt to purchase a Mercedes-Benz dealership from

third-party Asbury Fresno Imports, LLC ("Asbury"). (Dkt. No. 1.) On March 27, 2012, this Court granted summary judgment for MBUSA on all five claims in the operative First Amended Complaint ("FAC"). (Dkt. No. 71 ["Order"]; *see also* Dkt. Nos. 29, 52 ["Def.'s Converted MSJ"].) The Ninth Circuit subsequently affirmed summary judgment on four of the five causes of action but remanded for adjudication of Plaintiffs' sole surviving claim under California Vehicle Code § 11713.3(t)(6). (Dkt. No. 83.) Before the Court are Plaintiffs' motion for summary judgment on MBUSA's liability under section 11713.3(t)(6) and damages, (Dkt. No. 88 ["Pls.' MSJ"]), and MBUSA's cross-motion for summary judgment of no liability, (Dkt. No. 93 ["Def.'s MSJ"]). For the following reasons, the Court DENIES MBUSA's motion for summary judgment and GRANTS IN SUBSTANTIAL PART Plaintiffs' motion for summary judgment.

## II. BACKGROUND

The parties are familiar with the background facts of this case, which are extensively detailed in this Court's March 27, 2012 Order and the Ninth Circuit's November 5, 2014 Opinion. The facts pertinent to the present motions are as follows. On March 27, 2009, Plaintiffs entered into an Asset Purchase Agreement ("APA") with Asbury to purchase the assets of a Mercedes-Benz dealership. (PSUF 1; Dkt. No. 88-2, Decl. of Dwight G. Nelson ISO Pls.' MSJ ["Nelson Decl."] ¶¶ 2–3; Exh. A.)[1] On June 15, 2009, MBUSA notified Plaintiffs that it was exercising its contractual right of first refusal ("ROFR") to purchase the dealership assets under the terms of the APA. (PSUF 2; Nelson Decl. ¶ 4; Exh. B ["ROFR Notice"].) The parties now agree that the exercise of the ROFR was timely. (DSUF 1.) On July 14, 2009, Plaintiffs provided MBUSA with

---

[1] "PSUF" references encompass Plaintiffs' statement of uncontroverted facts in support of their motion for summary judgment, (Dkt. No. 88-1), MBUSA's response to Plaintiffs' statement of uncontroverted facts, (Dkt. No. 90), and Plaintiffs' reply to MBUSA's response, (Dkt. No. 99). Citations to "DSUF" encompasses both MBUSA's statement of uncontroverted facts in support of its cross-motion, (Dkt. No. 92), and Plaintiffs' response to MBUSA's statement, (Dkt. No. 98). Unless otherwise indicated, the cited facts are not substantively disputed.

an itemization of their expenses incurred from the investigating, evaluating, and negotiating of the APA with Asbury. (PSUF 6; Nelson Decl. ¶ 6; Exh. E ["Itemization"].) Plaintiffs' itemization totaled $1,957,246.00. (*Id.*)

On July 30, 2009, Plaintiffs and MBUSA participated in a mediation session in an attempt to resolve their disputes regarding MBUSA's exercise of the ROFR. (DSUF 5, 6.) Prior to mediation, the parties submitted mediation briefs detailing the parties' positions on whether MBUSA properly exercised the ROFR and whether MBUSA's exercise of the ROFR was timely. (DSUF 7; Dkt. No. 63, Decl. of Dwight G. Nelson ISO Pls.' Opp'n to Def.'s Converted MSJ ¶ 20; Exh. L ["Pls.' Mediation Br."], Exh. M, Def.'s Mediation Br.) At the end of the mediation, MBUSA agreed to assign its rights in the APA back to Plaintiffs if certain conditions were met. (DSUF 7–8.) Immediately following the mediation, the parties' counsel memorialized these conditions in an email exchange. (DSUF 9; Dkt. No. 23 [FAC], Exh. G ["Post-Mediation Emails"].) After several more weeks of negotiations, the parties finalized these terms in an Assignment and Assumption Agreement ("AAA") on August 28, 2009. (DSUF 9–11; Dkt. No. 56-2, Decl. of Gwen J. Young ISO Def.'s Converted MSJ ¶ 3; Exh. 1 [AAA]). Although the parties disagree as to precisely why the deal fell through, it is undisputed that the conditions for closing the deal were ultimately not satisfied, and Plaintiffs never signed the AAA. (DSUF 12–14.)

The FAC alleged five causes of action, including a claim for relief based on MBUSA's alleged violations of California Vehicle Code § 11713.3(t). (FAC ¶¶ 92–98.) Under this cause of action, Plaintiffs alleged that MBUSA had failed to provide proper notice of its exercise of the ROFR under section 11713.3(t)(2) and failed to reimburse Plaintiffs for expenses incurred in the attempt to purchase the dealership under section 11713.3(t)(6). (*Id.*) On March 27, 2012, the Court granted summary judgment for MBUSA on the FAC, including the section 11713.3(t) claim. (Order at 33–41.)

Specifically, the Court determined that, as a matter of first impression, Plaintiffs lacked standing to bring a claim under section 11713.3(t). (*Id.*) The Ninth Circuit reversed in part on this issue, holding that Plaintiffs had standing to sue under subsection (t)(6), which provided "a proposed transferee [with] a right to recover its expenses from a franchisor that usurps its contract by exercising a ROFR." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1133–34 (9th Cir. 2014).[2] To hold otherwise would render subsection (t)(6) meaningless by conferring onto "a proposed transferee the right to receive payment for its expenses without the ability to enforce that right in any meaningful manner." *Id.* at 1134. Having concluded that Plaintiffs held an implied right of action under section 11713.3(t)(6), the Ninth Circuit remanded for proceedings on this claim. *Id.*

## III. LEGAL STANDARD

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by

---

[2] With respect to subsection (t)(2), the Ninth Circuit concluded that notice in the present case was proper and did not violate any provisions of the California Vehicle Code. *Fresno Motors*, 771 F.3d at 1128–29.

looking to the substantive law. *Id*. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 249.

Where the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, *Celotex*, 477 U.S. at 325. Once this burden is met, the party resisting the motion must set forth, by affidavit or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## IV. ANALYSIS

### A. MBUSA's Liability under section 11713.3(t)(6)

California Vehicle Code § 11713.3(t)(6) states,

It is unlawful and a violation of this code for a manufacturer . . . to do . . . any of the following:

> (t) To exercise a right of first refusal or other right requiring a franchisee . . . to sell, transfer, or assign to the franchisor . . . all or a material part of the franchised business or of the assets of the franchised business unless all of the following requirements are met:
>
> > (6) The franchisor shall reimburse the proposed transferee for expenses paid or incurred by the proposed transferee in evaluating, investigating, and negotiating the proposed transfer. . . .

Cal. Veh. Code § 11713.3(t)(6).  The Ninth Circuit interpreted this subsection as giving "displaced prospective buyers" the "statutory right to recover its reasonably incurred expenses from the manufacturer." *Fresno Motors*, 771 F.3d at 1133–34.

The parties now move for summary judgment on the issue of MBUSA's liability under this subsection.  Plaintiffs contend that when MBUSA timely exercised its ROFR, it became obligated to reimburse Plaintiffs for their expenses incurred in evaluating, investigating, and negotiating the proposed transfer.  (Pls.' MSJ at 4–6; Dkt. No. 97, Pls.' Opp'n to Def.'s MSJ at 3.)  MBUSA argues that it is not liable for any of Plaintiffs' expenses because Plaintiffs "received the benefit of [their] bargain . . . once [MBUSA] agreed to assign its rights in the [APA] back to Fresno Motors."  (Def.'s MSJ at 5.)  The parties' motions raise two questions that must be answered to determine the issue of liability: Was Plaintiffs' right to reimbursement triggered when MBUSA exercised its ROFR on June 15, 2009, and, if so, was this right waived or forfeited through any subsequent actions or events?

On the first question, the Court finds MBUSA's exercise of the ROFR on June 15, 2009 triggered its obligation to reimburse Plaintiffs under subsection (t)(6).  The statute makes it unlawful for a manufacturer "to exercise a right of first refusal . . . unless . . . the franchisor . . . reimburse[s] the proposed transferee for expenses paid or incurred by the proposed transferee . . . ."  Cal. Veh. Code § 11713.3(t)(6).  This language necessarily indicates that MBUSA's statutory obligation to reimburse the proposed transferee is a mandatory condition of the valid exercise of its ROFR.  Put differently, the lawful exercise of the ROFR is concomitant with the obligation to reimburse.  The Ninth Circuit held that MBUSA's exercise of its ROFR was valid and timely on June 15, 2009.  (DSUF 1); *see Fresno Motors*, 771 F.3d at 1127, 1128 (holding that the record "demonstrate[s] that MB[USA] timely and lawfully exercised its ROFR" on June 15, 2009).  Thus,

MBUSA concurrently incurred a reimbursement obligation—and Plaintiffs obtained a legal claim for reimbursement—at that time.[3]

Having established that Plaintiffs had a statutory claim for reimbursement on June 15, 2009, the second question asks whether any subsequent events or actions occurred that eliminated Plaintiffs' claim. MBUSA argues in the affirmative and points to the July 30, 2009 mediation session and, more specifically, to (1) MBUSA's agreement to assign its rights in the APA back to Plaintiffs, and (2) Plaintiffs' "admission" that they would have no right to reimbursement when they agreed to MBUSA's re-assignment of the rights under the APA. (Def.'s Mot. at 5–6.) The Court disagrees that either of these grounds led to a waiver or relinquishment of Plaintiffs' claim for reimbursement.

Under California law, a legal right may be waived only by the "intentional relinquishment of a known right after full knowledge of the facts." *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*, 30 Cal. App. 4th 54, 59 (1994). "The essence of waiver . . . is the *voluntary* relinquishment of a known right." *City of Hollister v. Monterey Ins. Co.*, 165 Cal. App. 4th 455, 487 (2008) (emphasis added). As such, the "the pivotal issue in a claim of waiver is the intention of the party who allegedly relinquished the known legal right." *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal. App. 4th 1306, 1320 (2009) (quoting *DRG/Beverly Hills*, 30 Cal. App. 4th at 60). Waiver may be express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right. *Old Republic Ins.*

---

[3] Although not contested here, Plaintiffs have further demonstrated that they met the statutory requirement to provide a timely itemization of their expenses. *See* Cal. Veh. Code § 11713.3(t)(6) (obligating proposed transferee to provide a written itemization "within 30 days of the proposed transferee's receipt of a written request from the franchisor for that accounting"). MBUSA's June 15, 2009 letter requested Plaintiffs to "review [their] respective rights and obligations with respect to our exercise of this right of first refusal, including the submission of any reasonable expenses incurred . . . ." (DSUF 2; ROFR Notice.) On July 14, 2009, 29 days after receipt of MBUSA's letter, Plaintiffs transmitted a letter with an itemization of its purported expenses and fees in connection with the APA. (*See* Itemization.)

*Co. v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666, 678 (2000).  To find waiver in the latter instance, the party's acts must be "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Id.*

Nothing in the record demonstrates that Plaintiffs expressly or impliedly waived, or voluntarily relinquished, their claim for reimbursement from MBUSA.  Merely participating in a mediation session in an attempt to resolve the disputes concerning the propriety of MBUSA's exercise of the ROFR does not indicate any intent on Plaintiffs' part to voluntarily relinquish their claim.  Nor do any of the communications following the mediation session reveal such intent.  There is no mention of Plaintiffs' reimbursement claim—let alone an express agreement to waive such claim—in any of the emails that were exchanged following the mediation session.  (*See* Post-Mediation Emails.)  This is significant because the parties agree that the mediation resulted in MBUSA's agreement to assign the APA to Plaintiffs under certain conditions, *as memorialized in the email exchange*.  (DSUF 8, 9.)  Thus, the absence of any reference in the emails to Plaintiffs' claim, which, at the time, was for nearly $2 million, is highly probative of the lack of Plaintiffs' intent to waive their claim and the unreasonableness of any belief by MBUSA that such right had been relinquished.  This conclusion is further bolstered by the same glaring silence on Plaintiffs' reimbursement claim in the AAA, which the parties drafted after several more weeks of negotiations and intended to be the final contract. (DSUF 11; AAA.)  The parties are sophisticated businesses who had representation by counsel.  Through the course of this litigation, the parties produced voluminous documents and written communication exchanges that carefully track the parties' offers, positions, agreements, and disagreements for every step of Plaintiffs' quest to purchase the dealership.  Implying Plaintiffs' waiver from these facts, particularly given the history of the parties' dealings, is simply not credible.[4]

---

[4] Relatedly, the Court rejects MBUSA's argument that it mooted its liability by agreeing to assign its rights in the APA back to Plaintiffs, thus restoring to Plaintiffs the "benefit of the bargain." (Def.'s MSJ

The only evidence MBUSA cites that even alludes to Plaintiffs' reimbursement claim is Plaintiffs' mediation brief, submitted two days prior to the mediation session. In this nine-page brief, Plaintiffs vehemently oppose the propriety of MBUSA's exercise of the ROFR. (*See* Pl.'s Mediation Br.) In the last two pages, under the heading "Nelson's Approach to Resolution," it states:

> Nelson wants this dealership and remains ready, willing and able to move forward with closing on this deal. All that is necessary is that MBUSA give him the green light so that the parties to the [APA] can close. If MBUSA refuses, Nelson will be left with nearly $2 million in "reliance" damages, in addition to the lost profits he would have made operating this dealership. . . . Allowing Nelson to close this deal will avoid any payments by MBUSA to Nelson, and it will give MBUSA a great dealer in Fresno. If MBUSA refuses to allow Nelson this dealership, it needs to make Nelson whole by paying him $2 million.

(*Id.* at 8–9.) Pointing to this language, MBUSA argues that "Plaintiffs admitted then that they would have no right to reimbursement of the fees and expenses they now claim when they agreed to take an assignment of MBUSA's rights under its exercise." (Def.'s MSJ at 6.) MBUSA further argues "[t]hat . . . negotiations ultimately broke down entirely over Asbury's final demands does not change Plaintiffs' admissions." (*Id.*)

In essence, MBUSA seeks to estop Plaintiffs from recovering their expenses due to their representations in the mediation brief. *See* 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 244 ("In its usual application, estoppel is based upon a

---

at 5.) MBUSA erroneously presumes that it can "turn back the clock," so to speak, and unilaterally strip Plaintiffs of their statutorily-vested right. Not only does MBUSA fail to point to any law that would support such a proposition, but this directly contradicts well-established California law on waiver, which focuses on whether the *right-holder's* words and actions evince an intention to relinquish the right. *See DRG/Beverly Hills*, 30 Cal. App. 4th at 60 ("All case law on the subject of waiver is unequivocal: Waiver always rests upon intent. Waiver is the intentional relinquishment of a known right after knowledge of the facts." (internal citations and quotation marks omitted)). Plaintiffs obtained a legal claim for reimbursement the moment MBUSA exercised its right of first refusal, and such claim could not be inadvertently extinguished as a result of the actions of another party, *i.e.*, MBUSA.

representation of fact that the party is not permitted to deny."). MBUSA's argument most closely resembles the doctrine of promissory estoppel, under which "a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." *Youngman v. Nev. Irrigation Dist.*, 70 Cal. 2d 240, 249 (1969). An indispensable element of the doctrine of promissory estoppel is a promise. *Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031, 1044 (2010) ("[T]his doctrine cannot be invoked and must be held inapplicable in the absence of a showing that a promise had been made upon which the complaining party relied to his prejudice." (internal citation and quotation marks omitted)). That promise must "be clear and unambiguous in its terms." *Id.* (internal citation and quotation marks omitted).

MBUSA cannot invoke the doctrine of promissory estoppel because the mediation brief does not set forth a clear and unambiguous promise that Plaintiffs would forgo their reimbursement claim. The briefs were merely the parties' preliminary statements of their respective positions prior to entering the mediation session to possibly reach a resolution of their conflict. *Garcia*, 183 Cal. App. 4th at 1044 ("Estoppel cannot be established from . . . preliminary discussions and negotiations."). Even accepting that Plaintiffs' brief did contain some sort of offer to forgo their reimbursement claim, the Court cannot ascertain what the proposed terms of the promise were. Critically, the mediation brief is ambiguous as to what events needed to transpire before Plaintiffs would forgo their claim. For example, the brief states, "Allowing Nelson to close this deal will avoid any payments by MBUSA to Nelson, *and it will give MBUSA a great dealer in Fresno*." (Pls.' Mediation Br. at 9 (emphasis added).) It is far from clear if this meant MBUSA was merely required to give Plaintiffs an "opportunity" to close the deal with Asbury (regardless of any additionally-imposed conditions), if MBUSA was required to provide the landlord with a guaranty of the sublease, if the deal had to definitively close, or if a different deal altogether was contemplated. Because any promise on Plaintiffs' part is

too indefinite, MBUSA could not have reasonably relied on the statements in Plaintiffs' brief and, consequently, cannot avail itself of the doctrine of promissory estoppel. *See Garcia*, 183 Cal. App. 4th at 1045 (explaining that promissory estoppel requires a promise that is "definite enough that a court can determine the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages").

Subsection (t)(6) gives "a proposed transferee [the] right to recover its expenses from a franchisor that usurps its contract by exercising a ROFR." *Fresno Motors*, 771 F.3d at 1133. Plaintiffs obtained this right when MBUSA exercised its ROFR on June 15, 2009 and did not waive or otherwise forfeit this right thereafter. Therefore, the Court DENIES MBUSA's motion for summary judgment and GRANTS summary judgment for Plaintiffs on the issue of MBUSA's liability under section 11713(t)(6).

**B.  Damages**

Plaintiffs seek summary judgment on the issue of damages for $207,994.16.[5] Subsection (t)(6) entitles Plaintiffs to recover expenses paid or incurred in "evaluating, investigating, and negotiating the proposed transfer." Cal. Veh. Code § 11713.3(t)(6). These expenses may not "exceed the usual, customary, and reasonable fees charged for similar work done in the area in which the franchised business is located" and include "legal and accounting expenses, and expenses incurred for title reports and environmental or other investigations of real property on which the franchisee's operations are conducted." *Id.* In addition to a written itemization of these expenses, the proposed

---

[5] Although Plaintiffs' initial itemization sought reimbursement for nearly $2 million, $1,749,252.00 of that amount consisted of tax credits that have since been refunded by the state and are no longer at issue. (Pls.' MSJ at 5.)

transferee must provide a "copy of all nonprivileged reports and studies for which expenses were incurred." *Id.*

Here, Plaintiffs seek a total of $207,994.16 and list eleven, generally-described categories of expenses, such as "Legal Expenses" ($93,016.73), "Appraisals" ($9,750.00), and "Employee Labor" ($56,794.03).  (Nelson Decl. ¶ 8.)  Plaintiffs do not provide any additional description on what tasks were performed, what reports or studies were produced, or even how many hours were spent for each category.  No supporting documents whatsoever are included, be that copies of the relevant nonprivileged reports and studies or general invoices or billing statements for the expenses.  Nor do Plaintiffs provide any expert declarations, reports, or other evidence comparing Plaintiffs' expenses with those of the "usual, customary, and reasonable fees charged for similar work done in the area."  Nelson's bare assertion that the "$207,994.16 incurred by [Plaintiffs] on the terms set forth in the APA . . . were reasonable and customary expenses" is insufficient.  (*See* Nelson Decl. ¶ 9.)  While excruciating detail for each category is not necessary, on this record, the Court has no way of verifying whether Plaintiffs' expenses (1) were actually incurred; (2) relate to the evaluation, investigation, and negotiation of the proposed transfer; and (3) are usual, customary, and reasonable.  Therefore, the Court DENIES Plaintiffs' request for summary judgment on damages.[6]

//
//
//
//
//
//

---

[6] As MBUSA's conditional motion sought a continuance for the purpose of contesting Plaintiffs' claimed damages, (Dkt. No. 94), this motion is DENIED AS MOOT.

## V. CONCLUSION

Accordingly, the Court DENIES MBUSA's motion for summary judgment and GRANTS IN SUBSTANTIAL PART Plaintiffs' motion for summary judgment.

DATED: June 26, 2015

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE